Timothy J. Walton (State Bar No. 184292)
WALTON & ROESS LLP
407 South California Ave, Suite 8
Palo Alto, CA 94306

Phone (650) 566-8500
Fax: (650) 618-8687

Attorneys for Plaintiffs
LIMO HOSTING, INC. and OLEG GRIDNEV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIMO HOSTING, INC. *et al.*,<br><br>            Plaintiffs,<br><br>    vs.<br><br>MIKHAIL FIKS *et. al.*,<br><br>            Defendants. | ) Case No.: 3:08-cv-0247-SC<br>)<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **DEFENDANT'S MOTION TO DISMISS**<br>) **COMPLAINT UNDER 12(b)(6)**<br>)<br>)<br>) Date:      July 11, 2008<br>) Time:      10:00 a.m.<br>) Courtroom: 1, 17th Floor<br>) Judge:     Samuel Conti |

TABLE OF CONTENTS

I. INTRODUCTION 1

II. STATEMENT OF ISSUES 1

III. STATEMENT OF FACTS 1

IV. DISCUSSION 3

   A. Motions to Dismiss Are Disfavored 3

   B. Plaintiffs' First and Second Causes of Action Do Not Fail Because Plaintiffs Have Properly Alleged (1) The Mark Is Valid and Legally Protectable; (2)The Mark Is Owned by the Plaintiff; and (3) Defendant's Use of The Mark to Identify Goods and Services Is Likely to Create Confusion Concerning the Origin of Those Goods or Services. 4

   C. Plaintiffs' Third and Fifth Causes of Action Do Not Fail Because Defendant Created a False or Misleading Description of Fact and/or False Designation of Origin By Copying Plaintiffs' Web site. 5

   D. Plaintiffs' Fourth Cause of Action Does Not Fail Because Plaintiffs Have Properly Alleged the Elements of a Trade Dress Claim. 6

   E. Plaintiffs' Sixth Cause of Action Does Not Fail Because Defendant's Statements About Plaintiffs' Goods and Services Amounted to Material False Statements of Fact. 8

   F. Plaintiffs' Seventh Cause of Action for Interference with Contract Does Not Fail Because Plaintiffs State Sufficient Facts to Support Interference with Contract. 9

   G. Plaintiffs' Eighth Cause of Action Does Not Fail Because Plaintiffs Plead Sufficient Facts to State a Cause of Action for Interference with Prospective Economic Advantage. 10

   H. Plaintiffs' Ninth Cause of Action Does Not Fail Because California's Unfair Competition Law Under § 17200 Et. Seq. Creates a Separate Cause of Action. 11

   I. Plaintiffs Request Leave to Amend for Any Defective Cause(s) of Action. 12

V. CONCLUSION 13

TABLE OF AUTHORITIES

Cases

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.* (9th Cir. 2003) 320 F.3d 920 .................................................. 3

*Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.* (9th Cir. 1988) 838 F.2d 346 .......... 8

*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36 .......................... 11,12

*Burgert v. Lokelani Bernice Pauahi Bishop Trust* (9th Cir. 2000) 200 F.3d 661 ........ 3

*Clairol, Inc. v. Gillette Co.* (2d Cir. 1968) 389 F.2d 264 .............................. 4

*Clicks Billiards, Inc. v. Sixshooters, Inc.* (9th Cir. 2001) 251 F.3d 1252 ............. 7

*Comm. on Children's Television, Inc. v. Gen Foods Corp.* (1983) 35 Cal.3d 197 ...... 11

*Consumers Union of United States, Inc. v. Fisher Dev., Inc* (1989) 208 Cal.App.3d 1433  11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc* (1995) 11 Cal.4th 376 ................ 11

*Foman v. Davis*, (1962) 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 .................... 12

*Gallardo v. DiCarlo* (C.D. Cal. 2002) 203 F.Supp.2d 1160 ........................... 3

*Gilligan v. Jamco Dev. Corp.* (9th Cir. 1997) 108 F.3d 246 .......................... 3

*Global Mfg. Group, LLC v. Gadget Universe.com* (S.D. Cal. 2006) 417 F.Supp.2d 1161  7

*Guerrero v. Gates* (9th Cir. 2004) 357 F.3d 911 .................................. 3

*Levi Strauss & Co. v. Blue Bell, Inc.* (1985) 778 F.2d 1252 .......................... 7

*McKell v. Washington Mut., Inc.* (2006) 142 Cal.App.4th 1457 ..................... 11

*Navarro v. Block* (9th Cir. 2001) 250 F.3d 729 .................................. 3

*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027 ........................ 9

*Salma v. Capon,* (2008) 161 Cal.App.4th 1275 ................................... 10

| | | |
|---|---|---|
| 1 | *Sebastian Intern., Inc. v. Russolillo* (C.D. Cal. 2001) 162 F. Supp. 2d 1198 | 9 |
| 2 | *Smith v. Montero*, (9th Cir. 1981) 648 F.2d 602 | 6 |
| 3 | *Two Pesos, Inc. v. Taco Cabana, Inc.* (1992) 505 U.S. 763 | 6 |
| 4 | *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.* (9th Cir. 2005) 419 F.3d 925 | 4 |

## Statutes

| | |
|---|---|
| Fed. R. Civ. Proc. Rule 15(a) | 12 |
| 15 U.S.C. § 1095 | 4 |
| 15 U.S.C. § 1114 | 4 |
| 25 U.S.C. § 1125 | 5-6 |

## I. INTRODUCTION

Plaintiffs Limo Hosting, Inc. and Oleg Gridnev ("Plaintiffs") file this Opposition to Defendant Fiks' ("Defendant") Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' complaint pleads sufficient facts to establish each and every cause of action. Accordingly, Plaintiffs request that the Court deny Defendant's motion in its entirety, or in the alternative, allow Plaintiffs to amend where appropriate.

## II. STATEMENT OF ISSUES

Plaintiffs' Verified Complaint lists ten causes of action. Defendant has sought dismissal of each of these for a variety of reasons. The question before this Court is whether the complaint is adequate as it stands, or whether it must be amended to sufficiently put Defendant on notice of the claims in the case.

## III. STATEMENT OF FACTS

Plaintiffs are in the business of designing, creating, and hosting web sites for companies providing limousine services. (Verified Complaint at ¶ 10.) Defendant Fiks is a competitor with Plaintiffs in a niche industry of design, creation, hosting, and maintenance of web sites for companies providing limousine services. (*Id.* at ¶ 14.)

Sometime during July of 2007, Defendant copied Plaintiffs' entire homepage presentation from http://www.limohosting.com and pasted it onto a commercial web site at http://www.fixedsite.com. (*Id.* at ¶ 15.) Defendant also copied images and content and sold the work as his own to Plaintiffs' clients. (*Id.* at ¶ 16.) One of Plaintiffs' clients contacted Plaintiff Gridnev to advertise and Plaintiff Gridnev subsequently discovered that Defendant had copied Plaintiffs' web site, leading to confusion in the marketplace. (*Id.* at ¶ 17.)

On or about July 2, 2007 Plaintiff Oleg Gridnev informed Defendant about Plaintiffs' registered mark for "Limo Hosting" and demanded that he cease and desist from infringing upon Plaintiffs' intellectual property. Defendant Fiks acknowledged receipt of this email the same day. (*Id.* at ¶ 18.)

Defendant Fiks proceeded to make several untrue assertions about Plaintiffs and their web hosting and related services. (*See generally id.* at ¶¶ 20-26.) Fiks stated that he had "been in the web site business much longer than this Oleg Gridnev aka Alex." (*Id.* at ¶ 21.) This statement was untrue because Defendant's first web site predates Plaintiffs' service mark by only a few months. (*Id.* at ¶ 22.) Defendant Fiks made false statements of fact concerning Plaintiffs' business and services on an online web site called http://www.ripoffreports.com. On www.ripoffreports.com, Defendant stated that Plaintiffs charged $1500 to start service and $150 in hosting fees, in addition to other untrue statements. (*Id.* at ¶ 23.) Plaintiffs aver that they do not charge a start up fee, nor do they charge a hosting fee when customers pay to advertise on Plaintiffs' web sites. (*Id.* at ¶ 25.) In online forums, Defendant also made several statements asserting that several of Plaintiffs' former customers were now doing business with the Defendant instead of Plaintiffs. (*Id.* at ¶ 24.)

As a result of Defendant's behavior, Plaintiffs Limo Hosting and Oleg Gridnev suffered damage. (*Id.* at ¶ 27.) Plaintiffs also allege that Defendant profited, continues to profit, and was unjustly enriched by this wrongful conduct. (*Id.* at ¶ 30.) Plaintiffs filed a verified complaint which is itself evidentiary allegation.

//
//
//

## IV. DISCUSSION

### A. Motions to Dismiss Are Disfavored.

A motion to dismiss for failure to state a claim on which relief can be granted is disfavored by the court and rarely granted. (*Gilligan v. Jamco Dev. Corp.* (9th Cir. 1997) 108 F.3d 246, 249.) According to the Ninth Circuit, "[a] complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief." (*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.* (9th Cir. 2003) 320 F.3d 920, 931.) It is not a procedure for resolving a contest about the facts or the merits of the case. (*Guerrero v. Gates* (9th Cir. 2004) 357 F.3d 911, 916.) All allegations of material fact made in the complaint are taken as true and construed in the light most favorable to the plaintiff. (*Burgert v. Lokelani Bernice Pauahi Bishop Trust* (9th Cir.2000) 200 F.3d 661, 663.)

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests a plaintiff's compliance with the liberal pleading requirements of Rule 8(a)(2). (*Gallardo v. DiCarlo* (C.D. Cal. 2002) 203 F.Supp.2d 1160, 1164-65.) Therefore, such a motion is appropriate *only* where (1) the complaint lacks a cognizable legal theory; (2) complaint lacks sufficient facts to allege a cognizable legal theory; or (3) an affirmative defense or other bar to relief is apparent from the face of the complaint. (*Navarro v. Block* (9th Cir. 2001) 250 F.3d 729, 732.) As explained in the following sections, Plaintiffs properly allege facts supporting each cause of action.

//

//

//

//

1  B. **<u>Plaintiffs' First and Second Causes of Action Do Not Fail Because Plaintiffs Have Properly Alleged (1) The Mark Is Valid and Legally Protectable; (2)The Mark Is Owned by the Plaintiff; and (3) Defendant's Use of The Mark to Identify Goods and Services Is Likely to Create Confusion Concerning the Origin of Those Goods or Services.</u>**

Plaintiffs' verified complaint appropriately pleads the facts and elements required to state a cause of action for trademark violation under the Lanham Act (15 U.S.C. § 1114). First, Plaintiffs may appropriately assert that they have a valid and legally protectable interest in the name "Limo Hosting" registered on the federal register. While supplemental registration does not constitute *prima facie* evidence that the mark will receive protection as a valid trademark, it is not an admission against interest that the mark has not acquired distinctiveness required for protection. (15 U.S.C. § 1095; *Clairol, Inc. v. Gillette Co*. (2d Cir. 1968) 389 F.2d 264.) Defendant relies on the assertion that because Plaintiffs' mark is on the supplemental register, there must be "a demonstration of significant advertising and massive exposure that has established their trademark in the minds of consumers as an indication of origin of their services, (Defendant's Memorandum of Points and Authorities at 4, ¶ 1 (citing *FS Services, Inc. v. Custom Farm Services, Inc.* (7th. Cir. 1972) 471 F.2d 671, 674.)) However, that is not a complete statement of the rule. Under Ninth Circuit precedent,

> "[in determining] whether a descriptive mark has secondary meaning, a finder of fact considers: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." (*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.* (9th Cir. 2005) 419 F.3d 925, 930 (citation omitted).)

Plaintiffs have alleged the first factor because one of Plaintiffs' customers recognized that Defendant was not the actual source of the materials at http://www.limohosting.com and called to inform Plaintiffs of the confusion, thereby recognizing that Plaintiffs' mark was associated

4

with unique services. (Verified Complaint ¶ 17.) Plaintiffs have alleged the second factor because the "Limo Hosting" mark was at all times used on Plaintiffs' website serving as an advertisement for Plaintiffs' services. (*Id.* at ¶ 11.) Plaintiffs have alleged the third factor because Plaintiffs have continuously used the "Limo Hosting" mark to denote services in a niche market for over five years. (*Id.* at ¶ 14.) Under the fourth element, Plaintiff Gridnev authorized only one entity, "Limo Hosting," to use the mark, and Plaintiffs have used the mark in association with provision of services to customers. (*Id.* at ¶¶ 11-12.) These facts are sufficient to allege that the Plaintiffs' mark acquired secondary meaning under the liberal federal notice pleading.

Plaintiffs have also appropriately asserted that Fiks used the mark. (*Id.* at ¶ 15.) Fiks *copied* Plaintiffs' web site to use on his *own* web site that Fiks was using to do business on a commercial web site. (*Id.*) The verified complaint states that Fiks misappropriated the mark and placed it on a commercial web site. (*Id.*) The fact that Fiks later removed part of the infringing material is additional evidence that Fiks had control over the infringing material, and that Fiks had wrongfully copied it without Plaintiffs' consent. (*Id.* at ¶ 18-19.) This is evidence that Defendant Fiks was using the mark in commerce. For the foregoing reasons, Plaintiffs have pled all the elements required to establish a reasonable trademark infringement claim under the Lanham Act and therefore, Plaintiffs are entitled to judicial relief.

### C. **Plaintiffs' Third and Fifth Causes of Action Do Not Fail Because Defendant Created a False or Misleading Description of Fact and/or False Designation of Origin By Copying Plaintiffs' Web site.**

Plaintiffs maintain that they are entitled to a claim of false description pursuant to 25 U.S.C. § 1125 (§ 43(a)(1)(B) of the Lanham Act). The text of 25 U.S.C.A. § 1125 reads:

> "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . in commercial advertising or promotion,

misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

When suits for trademark infringement are brought under § 43(a) of the Lanham Act, courts should use the substantive law of trademarks. (*See Two Pesos, Inc. v. Taco Cabana, Inc.* (1992) 505 U.S. 763, 776.)

Under a false designation of origin, Defendant is liable on a theory that he engaged in "reverse passing off"; that is, Defendant took Plaintiffs' work and used it as his own. In the case of *Smith v. Montero*, the Ninth Circuit found that reverse passing off had occurred when a film studio substituted an actor's name for another in film credits. (*Smith v. Montero*, (9th Cir. 1981) 648 F.2d 602, 607.) This case is substantially similar to *Montero* because the Defendant took all of Plaintiffs' work and "reverse passed it off" at his own domain name without crediting the Plaintiff. Accordingly, Plaintiffs have stated a cause of action under a false description theory and are entitled to judicial relief. While it is true that false description and false designation of origin claims may overlap with previously pled causes of action and with each other, they are still distinct. Plaintiffs are not seeking duplicative recovery, but are merely attempting to assert all possible causes of action in vindication of their rights in accordance with Federal Rule of Civil Procedure Rule 8(d)(2) (formerly Rule 8(e)(2). Accordingly, Plaintiffs are entitled to maintain their causes of action for false designation of origin and false description.

**D. Plaintiffs' Fourth Cause of Action Does Not Fail Because Plaintiffs Have Properly Alleged the Elements of a Trade Dress Claim.**

Defendant's conduct in copying Plaintiffs' web site constituted unfair competition via trade dress infringement. Trade dress is "[t]otality of elements in which a product or *service* is packaged or presented." (J. McCarthy 1 § 8.01, emphasis added.) According to the Ninth Circuit, trade dress claims have three elements: (1) the claim must involve non-functional appearance, (2)

6

1  the trade dress must have acquired secondary meaning, and (3) there must be likelihood of
2  consumer confusion. (*Clicks Billiards, Inc. v. Sixshooters, Inc.* (9th Cir. 2001) 251 F.3d 1252.)
3      By its nature, this claim involves non-functional elements because Defendant copied an
4  entire web site, including images, code, and trademarks. (Verified Complaint at ¶ 13.) Thus,
5  Defendant infringed the trade dress by copying and using all functional and non-functional
6  aspects of Plaintiffs' web site. On this point, Defendant cites several factors that a court should
7  use to determine whether a trade dress is non-functional including (1) whether the trade dress
8  confers utility, (2) whether there are alternative designs (3) whether the Plaintiff claims or
9  advertises a utilitarian advantage, and (4) comparative design results. (*Global Mfg. Group, LLC*
10 *v. Gadget Universe.com* (S.D. Cal. 2006) 417 F.Supp.2d 1161, 1168.) These are inapposite,
11 however, because they do not capture what happened with Plaintiffs' web site design. Plaintiffs
12 have already alleged that Defendant misappropriated all aspects of a protected web site,
13 functional and non-functional. (Verified Complaint at ¶ 60.) Therefore, Plaintiffs have met their
14 burden for pleading for non-functionality.
15     Second, Plaintiffs' web site appearance has acquired secondary meaning. According to
16 the Ninth Circuit, acquisition of secondary meaning includes consideration of (1) whether a
17 reasonable consumer would associate the given trade dress with a particular producer (2);
18 amount and type of advertising promoting the trade dress (3); nature of trade dress and length of
19 use; and (4) exclusive use of the trade dress. (*See Levi Strauss & Co. v. Blue Bell, Inc.* (1985)
20 778 F.2d 1252, 1358 (*citing* 1 Gilson, *Trademark Protection & Practice*, § 209[1].)) Plaintiffs'
21 verified complaint satisfies the factor (1) because anyone in the limousine service business who
22 viewed the Plaintiffs' web site would recognize that the site belonged to the Plaintiffs. One of
23 Plaintiffs' customers actually realized that someone had copied Plaintiffs' web site and informed
24

Plaintiffs. (Verified Complaint at ¶ 17.) Plaintiffs' complaint satisfies factor (2) because the trade dress was readily visible on the internet for anyone to see. (*Id.* at 11.) Plaintiffs satisfy factor (3) because their trade dress is unique to their website, and they have enjoyed exclusive use of their trade dress for several years (*Id.* at ¶¶ 15, 21.) Finally, Plaintiffs satisfy factor (4) because Plaintiff Gridnev only authorized Limo Hosting to use its mark and related trade dress. Thus, Plaintiffs' web site appearance has acquired secondary meaning.

Finally, Defendant's use of Plaintiffs' propriety web site trade dress created consumer confusion. Plaintiffs and Defendant operate in a small niche market and further, Defendant actually sold Plaintiffs' work back to Plaintiffs' clients. (Verified Complaint at ¶ 14, 16.) Plaintiffs discovered the problem when one of Plaintiffs' clients called and expressed confusion over Defendant's web site. (*Id.* at ¶ 17.) Accordingly, Plaintiffs have stated more than sufficient facts to maintain their cause of action for trade dress infringement.

**E. Plaintiffs' Sixth Cause of Action Does Not Fail Because Defendant's Statements About Plaintiffs' Goods and Services Amounted to Material False Statements of Fact.**

Under California law, trade libel is intentional disparagement of the quality of a product, which results in damage to the plaintiff. (*Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.* (9th Cir. 1988) 838 F.2d 346, 351.) According to the Ninth Circuit, "[t]rade libel and product disparagement are injurious falsehoods that interfere with business. Unlike classic defamation, they are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business." (*Id.*) In this case, Defendant, on an online site called Ripoffreports.com, stated that "he [Plaintiff Oleg Gridnev] rips them [Plaintiffs' customers] off charging $1,500 to start and $150 hosting." (Verified Complaint at ¶ 23.) Plaintiffs aver that they do not charge a start up fee or charge a hosting fee when a customer pays to advertise on Plaintiffs' web site. (*Id.* at ¶ 25.) On these facts, Plaintiffs have sufficiently pled that Defendant

knowingly, or at least recklessly made material false statements of fact concerning Plaintiffs' business practices. It is Plaintiffs' belief that Defendant published the remarks described in ¶ 24 of the complaint so as to deter customers from purchasing Plaintiffs' goods and services and from otherwise dealing with Plaintiffs. (*Id.* at ¶ 85.) This is the very definition of trade libel, and is sufficient to satisfy liberal federal notice pleading.

**F.** **Plaintiffs' Seventh Cause of Action for Interference with Contract Does Not Fail Because Plaintiffs State Sufficient Facts to Support Interference with Contract.**

Plaintiffs allege that customers switched their web hosting contracts to Defendant based upon the false statements of the Defendant. The elements of intentional interference with a contract are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1047.) First, Plaintiffs had contractual relationships with their customers. (Verified Complaint at ¶ 89.) Specific customers and specific contracts are facts properly left for discovery. Second, California pleading requirements regarding what Defendant knew about the contract are liberal. The rule governing defendant's knowledge is that plaintiff does not have to identify the specific contractual relations which have allegedly been disrupted or the specific identity of the contractual party, but need only show that a defendant knew that contractual relations with a third party existed. (*Sebastian Intern., Inc. v. Russolillo* (C.D. Cal. 2001) 162 F. Supp. 2d 1198.) Here, Defendant had knowledge that Plaintiffs had other contracts, as acknowledged by his comments in online forums. (Verified Complaint at ¶¶ 24, 89.) Third, Defendant intended to disrupt these relationships. Defendant made repeated untrue remarks in online forums denigrating Plaintiffs' services. (*Id.* at ¶ 24.) Fourth, Plaintiffs assert that evidence of breach of

these contracts exists because Defendant claims to have successfully converted several of Plaintiffs' customers. (*Id.* at ¶ 24.) Finally, Plaintiffs allege that the resulting loss of customers and their contracts caused him damage and allowed Defendant to profit from his wrongful conduct. (*Id.* at ¶ 24.) Thus, Plaintiffs have alleged facts supporting each element and have established their cause of action.

### G. **Plaintiffs' Eighth Cause of Action Does Not Fail Because Plaintiffs Plead Sufficient Facts to State a Cause of Action for Interference with Prospective Economic Advantage.**

Plaintiffs allege that Defendant knew his false statements would harm the Plaintiffs in the marketplace. The elements of the tort of interference with prospective economic advantage are (1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. (*Salma v. Capon,* (2008) 161 Cal.App.4th 1275, 1290.) First, Plaintiffs, under oath, averred the existence of contractual relationships with third parties at the time of the Defendant's conduct. (Verified Complaint at ¶ 97.) Second, the knowledge-of-contract requirement for interference with prospective economic advantage is the same as it is for interference with contract. Defendant only needs to have known that third parties had relationships with Plaintiff, which by Defendant's own admission, he did. (*Id.* at ¶ 24.) Third, Defendant engaged in wrongful acts designed to disrupt Plaintiffs' contracts by posting in online forums and via private communications with Plaintiffs' customers. (*Id.* ¶¶ 24, 99.) Fourth, Defendant's statements in an online forum reveal that his actions were a proximate cause of disruption to Plaintiffs' business relationships. (*Id.* at ¶ 100.) Finally, by virtue of Defendant's

actions, Plaintiffs lost customers which resulted in damage. (*Id.* at ¶ 101.) Because Plaintiffs' allege sufficient facts to show that Defendant intended to divert Plaintiffs' business to himself, they have established a cause of action for prospective economic advantage.

### H. Plaintiffs' Ninth Cause of Action Does Not Fail Because California's Unfair Competition Law Under § 17200 Et. Seq. Creates a Separate Cause of Action.

California's Unfair Competition laws under Business and Professions code section 17200 *et seq.* provide a broad definition of unfair competition covering anything listed within section 17200 *et seq.* (*Consumers Union of United States, Inc. v. Fisher Dev., Inc* (1989) 208 Cal.App.3d 1433, 1438-39.) Under section 17200 *et. seq.*, any business act or practice that is unlawful may be enjoined under California's unfair competition law. (*Comm. on Children's Television, Inc. v. Gen Foods Corp.* (1983) 35 Cal.3d 197, 209-210.) Federal law does not preempt use of the unfair competition statute to remedy a violation of federal law. (*See McKell v. Washington Mut., Inc.* (2006) 142 Cal.App.4th 1457, 1485-1486.)

Plaintiffs have alleged unfair business practices and causes of action that bring it under California Business and Professions Section 17200. First, California recognizes causes of action under § 17200 for interference with a contractual relationship and in situations where the Plaintiff stands to obtain future gains by virtue of a business association. (*Della Penna v. Toyota Motor Sales, U.S.A., Inc* (1995) 11 Cal.4th 376, 381.) As described above, and in their verified complaint, Plaintiffs have pled that Defendant engaged in interference with contracts and with Plaintiffs' prospective economic advantage (Verified Complaint at ¶¶ 88-102.) Plaintiffs have also alleged that Defendant engaged in fraudulent business practices. In order to prove a fraudulent or deceptive practice, a showing that members of the public are likely to be deceived is all that is required. (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 49.) Defendant made false statements as to the quality of Plaintiffs' services, statements in online forums, and

1 misappropriated Plaintiffs' trademark so as to deceive and confuse consumers as to the source, affiliation, and sponsorship of goods and services. (Verified Complaint at ¶¶ 107-109.) This brings it within the liberal rule for fraudulent acts and practices under California Business and Professions Section 17200.

California does not require that specific business practices be fraudulent, illegal, or even cognizable under a specific cause of action. (*Blakemore* 129 Cal.App.4th. at 48.) In *Blakemore v. Superior Court*, sales representatives for a cosmetics company were able to state a claim for fraudulent and deceptive behavior based on Defendant merchandising company's mailing of unordered merchandise. (*Id.* at 49.) The court held that this was a deceptive practice in violation of Section 17200 *et. seq.* despite the fact that there would not otherwise have been a legal remedy. (*Id.*) Thus, Plaintiffs contend that even if no cause of action lies against the Defendant, Defendant's conduct in the marketplace was a violation of Section 17200 sufficient to state an independent cause of action.

**I.   Plaintiffs Request Leave to Amend for Any Defective Cause(s) of Action.**

Leave to amend a pleading "shall be freely given when justice so requires." (Fed. R. Civ. Proc. Rule 15(a).) According to the Supreme Court, "[w]here the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." (*Foman v. Davis*, (1962) 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222.) If this Court is inclined to dismiss any of the claims presented in .the verified complaint, Plaintiffs request leave to amend.

//

//

//

### III. CONCLUSION

For the above stated reasons, Plaintiffs have properly pled each and every cause of action in their Complaint.

Accordingly, Plaintiffs request that this Court deny Defendant's motion to dismiss under 12(b)(6) as to each and every cause of action.

In the alternative, Plaintiffs request leave to amend.

WALTON & ROESS LLP

Date:   June 20, 2008                               BY: /s/ Timothy J. Walton
                                                    Timothy J. Walton
                                                    Attorneys for Plaintiffs

Timothy J. Walton (State Bar No. 184292)
WALTON & ROESS LLP
407 South California, Suite 8
Palo Alto, CA 94306

Phone (650) 566-8500
Fax: (650) 618-8687

Attorneys for Plaintiffs
LIMO HOSTING, INC. and OLEG GRIDNEV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIMO HOSTING, INC. et al., | ) Case No.: 3:08-cv-0247-SC |
| Plaintiffs, | ) |
| vs. | ) **[PROPOSED] ORDER DENYING** |
| | ) **DEFENDANT'S MOTION TO DISMISS** |
| MIKHAIL FIKS et. al., | ) **UNDER 12(b)(6)** |
| Defendants. | ) Date:      July 11, 2008 |
| | ) Time:      10:00 a.m. |
| | ) Courtroom: 1, 17th Floor |
| | ) Judge:     Samuel Conti |

  Defendant Fiks' motion under 12(b)(6) to dismiss Plaintiffs' verified complaint came on regularly for hearing on July 11, 2008. Plaintiff Gridnev appeared by and through his attorney Timothy J. Walton and Defendant Fiks appeared by and through his attorneys of record.

  The Court having read and considered the moving and opposing papers, and having heard and considered argument of counsel and good cause appearing,

//

1

[Proposed] Order Denying Defendant's Motion to Dismiss Under 12(b)(6)

1  IT IS HEREBY ORDERED that:

2       Defendant's motion to dismiss is DENIED in its entirety.

3  IT IS SO ORDERED.

4

5  Dated: _____       By: _____
                                              U.S. District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24