**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Defendant and Cross-Plaintiff MIKHAIL FIKS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**LIMO HOSTING, INC.**, *et al.*,

     Plaintiffs,

  v.

**MIKHAIL FIKS**, *et al.*,

     Defendants.

---

**MIKHAIL FIKS**,

     Cross-Plaintiff,

  v.

**LIMO HOSTING, INC.**, *et al.*,

     Cross-Defendants.

CASE NO. 3:08-cv-02474-BZ

**DEFENDANT MIKHAIL FIKS'S TRIAL BRIEF**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**FIKS'S TRIAL BRIEF**

1

**TABLE OF CONTENTS**

I. Introduction.................................................................................................. 1

II. Factual Background ................................................................................... 1

III. Statement of Claims and Defenses ........................................................ 6

    A.  Fiks's Claims ...................................................................................... 6

        1. Violation of California Civil Code §52.1 ................................... 6

        2. Cybersquatting ......................................................................... 6

        3. Defamation................................................................................ 7

    B.  Plaintiffs' Claims ............................................................................... 7

        1. Plaintiffs' copyright claim fails ................................................. 7

            a. Plaintiffs' have submitted no evidence of the content of their copyrighted work ................................................................. 8

            b. Even if Plaintiffs' could show copyright infringement, they are not entitled to statutory damages or attorneys' fees ............................... 8

        2. Plaintiffs' trademark claims fail for multiple reasons ............................. 9

            a. Plaintiffs have not produced any evidence of secondary meaning of the LIMO HOSTING mark ...................................... 9

            b. Plaintiffs have not produced any evidence that Fiks used the LIMO HOSTING mark in commerce......................................... 11

            c. Plaintiffs have not produced any evidence of actual of likely confusion ......................................................................... 11

            d. Plaintiffs have produced no evidence of any damages................... 12

        3. Plaintiffs have produced no evidence to support their trade libel claim ................................................................................ 12

        4. Plaintiffs have produced no evidence to support their claim for interference with contract ............................................... 13

        5. Plaintiffs have produced no evidence to support their interference

KRONENBERGER BURGOYNE, LLP<br>150 Post Street, Suite 520<br>San Francisco, CA 94108<br>www.KBInternetLaw.com

with prospective economic advantage claim ...................................... 14

6. Plaintiffs section 17200 claim is entirely derivative of their other

deficient claims, and therefore fails  .................................................. 14

IV. Conclusion ........................................................................................... 15

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**TABLE OF AUTHORITIES**

2

*Cairns v. Franklin Mint Co.,* 24 F. Supp. 2d 1013, 1040 (C.D. Cal. 1998)..................... 12

3

*Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 802 (9th Cir. 1970) ........ 11

4

*Closed Loop Marketing, Inc. v. Closed Loop Marketing, LLC,* 589 F. Supp. 2d 1211,

5

1216, 1219 (E.D. Cal. 2008) ............................................................................... 9, 11

6

*Computer Access Technology Corp. v. Catalyst Enterprises, Inc.,* 273 F. Supp. 2d

7

1063, 1075-76 (N.D. Cal. 2003) ............................................................................. 12

8

9

*CreAgri, Inc. v. USANA Health Sciences, Inc.,* 474 F.3d 626, 629, n.6

10

(9th Cir. 2007) ......................................................................................................... 10

11

*Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696 (9th Cir. 2008)........... at *passim*

12

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143 (9th Cir.

13

1999)........................................................................................................................ 11

14

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.,* 12 F. Supp. 2d 1068, 1075

15

(C.D. Cal. 1998) ...................................................................................................... 10

16

*Finance Exp. LLC v. Nowcom Corp.,* 564 F.Supp.2d 1160 (C.D. Cal. 2008) ............... 11

17

*Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 20 (1st Cir. 2004) ............................................... 9

18

*FS Services, Inc. v. Custom Farm Services, Inc.,* 471 F.2d 671, 674 (7th Cir. 1972).... 11

19

*Glow Industries, Inc. v. Lopez,* 252 F. Supp. 2d 962, 999 (C.D. Cal. 200) .................... 12

20

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir.

21

2008)........................................................................................................................ 13

22

*Japan Telecom, Inc. v. Japan Telecom America Inc.,* 287 F.3d 866, 873

23

(9th Cir. 2002) ...................................................................................................... 9, 11

24

*Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1407 (9th Cir. 1993) .................. 12

25

*M2 Software, Inc., a Delaware corporation v. Madacy Entertainment, a corporation,*

26

421 F.3d 1073, 1080 (9th Cir. 2005) ...................................................................... 11

27

*Norm Thompson Outfitters, Inc. v. General Motors Corp.,* 448 F.2d 1293, 1298

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

(9th Cir. 1971) ................................................................................................... 9

*Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004)..... 13

*Optinrealbig.com, LLC v. Ironport Systems, Inc.,* 323 F. Supp. 2d 1037, 1048, 1049

(N.D. Cal. 2004) ..................................................................................... 12, 14

*Pacific Exp., Inc. v. United Airlines, Inc.,* 959 F.2d 814, 819 (9th Cir. 1992). ............... 14

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1148 (9th Cir. 2007) .................... 8

*Taus v. Loftus,* 40 Cal. 4th 683, 720 (2007). ................................................... 7

*Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.,* 175 F.R.D. 658, 661-62

(S.D. Cal. 1997). ................................................................................... 12

*Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 783 (9th Cir. 2002). ......................... 10

*Verizon California Inc. v. Navigation Catalyst Systems, Inc.,* 568 F. Supp. 2d 1088,

1094 (C.D. Cal. 2008). .............................................................................. 6

**Statutes**

Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d). ......................... 6-7

3 J. McCarthy, McCarthy on Trademarks and Unfair Competition §15:11, §19:36

(4th ed. 2008)........................................................................................ 10

17 U.S.C. §501 ............................................................................................ 8

17 U.S.C. §504(b) and (c) ............................................................................ 8

17 U.S.C. §412(2) ....................................................................................... 8

Cal. Bus. & Prof. Code section 17200 ............................................................ 14

Cal. Civ. Code §52.1 .................................................................................... 6

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# I.   INTRODUCTION

Plaintiff and Cross-Defendant Oleg Gridnev is a bully and a menace.  On literally hundreds of occasions, Gridnev has threatened the life, health, and livelihood of Defendant and Cross-Plaintiff Mikhail Fiks, Fiks's family, and Fiks's colleagues and customers. On several occasions, <u>Gridnev threatened to kill Fiks</u>. The harassment is so serious that one of Fiks's customers filed a police report after Gridnev threatened to come over to the customer's house, "and take a baseball bat and break [his] kneecaps and drive the motherfuckers up [his] throat."   And this is just one example out of hundreds of incidents of threats and harassment.

Fiks operates several websites providing hosting and advertising services for the limousine industry.   Gridnev and his company, Limo Hosting, Inc. ("Limo Hosting") (collectively, "Plaintiffs") offer competitive website services, though often at less favorable prices and terms than Fiks offers.  Faced with competition from Fiks, Gridnev's reaction was to call Fiks repeatedly and terrorize him with threats of violence.

As a result of Plaintiffs' threats, Fiks has had to change his life fundamentally. Fiks has changed his business models to avoid any supposed overlap with Plaintiffs' business, Fiks has changed his phone number and stopped answering unrecognized calls, and Fiks has even been forced to flee with his family to other locations when he thought Plaintiffs might show up at his door.  Plaintiffs have put Fiks in a constant state of fear.

During all of this, Fiks did nothing wrong.  To date, Plaintiffs have not produced a shred of evidence supporting any of their claims.  Plaintiffs' lawsuit is like everything else they have done:  a resort to intimidation.

## II.  FACTUAL BACKGROUND

### <u>Fiks's Business</u>

Fiks has extensive experience in website development, hosting, and marketing. Since 2000, Fiks has run his own website businesses, which among other things, provide various online services for the limousine industry.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   In July of 2001, Fiks launched a website resolving to the domain name

2   <FixedSite.com>, which offers website design, hosting, and optimization services

3   targeting mortgage and limousine companies (the "Fixed Website").   In September of

4   2002, Fiks launched a website resolving to the domain name <LimoDeals.com>, which

5   provides a directory of advertisements for the limousine services industry (the "Limo

6   Deals Website").   And in October of 2002, Fiks launched a website, resolving to the

7   domain name <LimoRecycler.com>, which provides an online marketplace for new and

8   used limousines (the "Limo Recycler Website").   Fiks has operated the Limo Recycler

9   Website continuously since that date.

10   As a result of his investment, hard work, and business acumen, Fiks has enjoyed

11   success with his various website businesses, including the growth of a devoted clientele.

### Plaintiffs' Misconduct

13   Plaintiffs compete with Fiks, offering competitive website design and hosting

14   services, as well as a competitive online directory of advertisements for limousine

15   companies.   In March of 2003, Plaintiffs apparently learned that Fiks was offering

16   competitive services at more favorable prices and terms.   Shortly thereafter, and out of

17   the blue, Gridnev called Fiks on the phone and began screaming and cursing at him.

18   Gridnev demanded that Fiks stop operating his Limo Deals Website, and in fact, that he

19   stop offering any website directories for limousine services.   Fiks was shocked and

20   scared by Gridnev's behavior.   Fiks had never even heard of Gridnev before this call, and

21   he couldn't understand why he was so upset.

22   Nonetheless, Fiks was able to placate Gridnev during the call, and Fiks and

23   Plaintiffs established an amicable relationship.   Specifically, Fiks and Plaintiffs agreed to

24   place hyperlinks on their websites linking to the other's websites.   This informal

25   agreement operated smoothly for several years, and during this time Fiks and Plaintiffs

26   did not communicate.

27   For reasons unbeknownst to Fiks, on or around July 2, 2007, Gridnev called Fiks

28   and again began to yell at him.   Gridnev accused Fiks of infringing Plaintiffs' purported

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  LIMO HOSTING trademark on the Fixed Website.  Other than the links to Plaintiffs'
2  websites, Fiks had never displayed the purported LIMO HOSTING trademark on his
3  website.  Fiks didn't know what Gridnev was talking about.

4       Gridnev acted irrationally on the phone call, screaming profanities, insults, and
5  threats at Fiks for minutes-on-end.  Fiks was scared by Gridnev.  In a good faith attempt
6  to placate Gridnev, Fiks agreed to remove any link to Plaintiffs' websites.  At this point,
7  Fiks just wanted Gridnev out of his life.

8       **Plaintiffs Harassed and Threatened Fiks and Fiks's Customers**

9       Unfortunately, Gridnev's harassment, threats, and intimidation continued even
10  after Fiks removed the links to Plaintiffs' websites.  Beginning in July of 2007, Gridnev
11  made <u>hundreds</u> of phone calls to Fiks.  During these calls, Gridnev yelled and screamed
12  at Fiks.  He threatened to kill and seriously injure Fiks and Fiks's family.  He threatened
13  to sue Fiks.  He threatened to hack into Fiks's websites and destroy Fiks's businesses.
14  Gridnev made many of these calls in the middle of the night, waking up Fiks and his
15  family.  Gridnev also said that he would have his friends in Las Vegas drive to Fiks's
16  house and brutally attack Fiks.

17       As a result of Gridnev's campaign of harassment and intimidation, Fiks was forced
18  to fundamentally change his life.  He was constantly worried that somebody would show
19  up and attack him and his family.  Fiks never knew when Gridnev would call next or
20  whether he might show up at any time.  In addition to changing his phone number, Fiks
21  was forced to simply stop answering his phone.

22       Also beginning in July of 2007 and continuing to the present, Gridnev called,
23  harassed, intimated, and threatened Fiks's customers.  For example, Gridnev made
24  numerous harassing and threatening calls to Fiks's customer, William Sharp of Sir
25  Randolph Classic Transportation of Orlando.  Mr. Sharp had previously switched from
26  Plaintiffs' hosting services to Fiks's service for his limousine company.  After Mr. Sharp
27  stopped using Plaintiffs' services the harassment began.  Gridnev made verbal threats to
28  Mr. Sharp and his business partner.  The threats and harassment became so severe that

1    Mr. Sharp filed a police report.

2                                    **Plaintiffs Defamed Fiks**

3          In  addition  to  the  threatening  calls,  Plaintiffs  have  defamed  Fiks  and  Fiks's

4    business.    For  example,  Plaintiffs  published  the  following  false  statements  on  the

5    <RipoffReport.com> website:

6    •  "This Mike Fix, lazy non-creative Soviet mentality loser goes to LimoHosting.com

7        copies the entire home page presentation and pastes it on his phony wannabe-

8        directory site."

9    •  "I though the guy must have some mental malfanction. So now, this rat decides to

10        go to a war with us by creating another website where he took out of context some

11        pathetic  attempt  to  slander  our  company  by  another  rip  off  artist,  and  without

12        displaying our response."

13    •  "I hope you realise that the sales pitch you may have read on his sites which may

14        have influenced your decision to subscribe for his services is none of his original

15        thoughts and in fact belongs to us."

16    •  "Anyone should know that this rat with his spam sites has minimal traffic and his

17        money making concept is simple."

18    •  "This Mike Fix, lazy non-creative freedom-of-speech-hippie mentality loser goes to

19        LimoHosting.com and many other sites, copies the entire home page presentation

20        and pastes it on his phony wannabe-directory site."

21    •  "Speaking of a Rat in your Barn, this small minded ripoff artist then goes to our

22        directory like it's his own freaking collection of good ideas, images and content,

23        takes whatever he wants and under the radar sells our work as his own to even

24        our clients."

25    •  "He licks off our work from our sites, calls in and pretends to be a potential

26        customer so that he could fish out our rates and then even further use it against

27        us, while all alone using our sales pitch on his sites, and once confronted he gets

28        upset that he could not come up with his own style and puts a 'Consumer Alert'

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

about our company totally out of context."

- "Hell, you don't have friends or family. Like I told you before, you can listen to my messages before you go to sleep, you pathetic rat. By posting yourself-promotions, you are only embarrassing yourself even more."

- "You have that certain nothing. Truly, you are about as interesting as watching a slug move slowly across a large rock. If you called the Suicide Hotline, they'd say: 'Go ahead. Do it!' Maybe you wouldn't come as such a Jerk-In-The-Box if you weren't so dumb that even blondes tell jokes about you."

Additionally, on or around February 9, 2008, Plaintiffs sent emails to many of Fiks's existing customers claiming, among other things, that Fiks "ripped off [Plaintiffs'] sales pitch and used it to compete with [Plaintiffs]" and that Fiks "'The Rat' here is simply nothing more than a pest and a wannabe in our barn."  Plaintiffs sent these emails to many of Fiks's customers.

### Plaintiffs Cybersquatted on Fiks's FREE LIMO WEBSITES Trademark

Because of Gridnev's harassment, in July of 2007 Fiks created an entirely new website resolving to the domain names <FreeLimoWebsite.com> and <FreeLimoWebsites.com> (the "Free Limo Website").  The Free Limo Website offers website development and hosting services targeted at limousine companies.  Because this was a new website and new brand for Fiks, Fiks expended considerable time and effort in developing the Free Limo Website and in marketing the FREE LIMO WEBSITE brand.

In an blatant attempt to trade off of Fiks's hard work and goodwill, on or around August 7, 2008, Plaintiffs registered the domain names <FreeLimoWebsite.net>, <FreeLimoWebsite.org>, <FreeLimoWebsites.net>, and <FreeLimoWebsites.org> (collectively, the "Disputed Domains").  Plaintiffs immediately set up competing websites resolving to the Disputed Domains which offer competitive design and hosting services for limousine companies, nearly identical to those offered by Fiks's Free Limo Website.

//

Case No. 3:08-cv-02474-BZ

5

FIKS'S TRIAL BRIEF

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

### III. STATEMENT OF CLAIMS AND DEFENSES

**A.    Fiks's Claims**

**1.    Violation of California Civil Code §52.1**

California Civil Code section 52.1 makes it unlawful to:

> interfere[] by threats, intimidation, or coercion, or [to] attempt[] to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.

Section 52.1 provides a private right of action to recover damages, including treble damages, statutory damages of $4,000 per incident, and attorneys' fees.

Plaintiffs have made hundreds of harassing phone calls to Fiks.  During these calls, Gridnev has yelled and screamed at Fiks, threatened to kill and seriously injure Fiks and Fiks's family, threatened to sue Fiks, and threatened to hack into Fiks's websites and destroy Fiks's businesses.  Plaintiffs' harassment and intimidation forced Fiks to fundamentally change his life and business because he was constantly worried that somebody would assault or kill him and his family and/or destroy his business. Plaitniffs' misconduct thereby interfered with Fiks's rights secured by the Federal and California Constitutions and laws.

**2.    Cybersquatting**

To succeed on a claim under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d), a plaintiff must prove: a) that he or she has trademark rights in a mark through continuous use of the mark in commerce, b) that the trademark has become distinctive, c) that the domain name at issue and the plaintiff's trademark are confusingly similar, and d) that the defendant acted in bad faith in registering the trademark.   15 U.S.C. §1125(d); *see Verizon California Inc. v. Navigation Catalyst Systems, Inc.,* 568 F. Supp. 2d 1088, 1094 (C.D. Cal. 2008).

As a result of Fiks's continuous and extensive marketing of the FREE LIMO

1  WEBSITE trademark in connection with Fiks's website services, the trademark has

2  acquired secondary meaning and is associated in the minds of the limousine industry

3  with Fiks and his services.  As a result, Fiks has developed common law rights to the

4  FREE LIMO WEBSITE trademark.  Plaintiffs registered the Disputed Domains in a bad

5  faith effort to disrupt Fiks's business and to trade off the goodwill of the FREE LIMO

6  WEBSITE trademark.  Plaintiffs' registration and use of the Disputed Domains violates

7  section 43(d) of the Lanham Act, 15 U.S.C. §1125(d), because the Disputed Domains

8  are confusingly similar to Fiks's FREE LIMO WEBSITE trademark, and Plaintiffs

9  registered the Disputed Domains in bad faith.

10         **3.      Defamation**

11         The tort of defamation involves (1) a publication that is (2) false, (3) defamatory,

12  and (4) unprivileged, and that (5) has a natural tendency to injure or that causes special

13  damage.  *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007).

14         Plaintiffs knowingly published false statements about Fiks and Fiks's business on

15  the <RipoffReport.com> website, and in emails sent to Fiks's customers.  Among other

16  falsities, Plaintiffs accused Fiks of stealing material from Plaintiffs' websites and passing

17  it off as his own, and being a rip-off artist.  Plaintiffs published the statements in an

18  attempt to disparage Fiks and Fiks's business, and to encourage customers to leave Fiks

19  and hire Plaintiffs.  As a result of the postings and emails, Fiks's reputation was

20  tarnished, and several customers discontinued their business relationships with Fiks.

21  **B.     Plaintiffs' Claims**

22         **1.      Plaintiffs' copyright claim fails.**

23         Plaintiff's claim for copyright infringement fails for two fundamental reasons.  First,

24  Plaintiffs have produced no evidence of the content of the supposedly infringed

25  copyrighted work.  Second, Plaintiffs are not entitled to statutory damages or attorneys'

26  fees when the alleged infringement began before the date of registration.

27  //

28  //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a.   Plaintiffs have submitted no evidence of the content of their copyrighted work.

In order to succeed on a copyright claim under 17 U.S.C. §501 a plaintiff must prove two elements: a) the plaintiff's ownership of a registered copyright in the allegedly infringed material, and b) that the alleged infringers violated at least one of the plaintiff's exclusive rights granted to the plaintiff under the Copyright Act. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1148 (9th Cir. 2007).

Plaintiffs have not produced the contents of their alleged copyrighted works (*i.e.* the work(s) that are the subject of their copyright registrations).  Thus, Plaintiffs cannot prove that Fiks copied these works.  While Plaintiffs have submitted their certificates of copyright registration, Plaintiffs have not submitted the actual registered works.   The Court cannot simply take Plaintiffs' unsupported word that Fiks copied Plaintiffs' supposed copyrighted work.  Plaintiffs must submit evidence of the copying.  Because Plaintiffs have produced no evidence of copying, Plaintiffs' copyright claim fails.

### b.   Even if Plaintiffs could show copyright infringement, they are not entitled to statutory damages or attorneys' fees.

Even if Plaintiffs could show copyright infringement—and they cannot—they still would not be entitled to statutory damages or attorneys' fees.  Under 17 U.S.C. §504(a) and (c), a copyright owner may elect to recover statutory damages instead of actual damages. However, under section 412(2), to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after the first publication of the work.  17 U.S.C. §412(2); *see Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, *passim* (9th Cir. 2008).

In this case, it is undisputed that Plaintiffs' registration became effective on July 2008. It is also undisputed that the alleged initial acts of infringement occurred well before this registration date.  (First Amended Complaint ¶29; Order Granting in Part and Denying in Part Defendant Fiks's Motion to Dismiss at 5:7-13.)  Any subsequent, post-registration acts of alleged infringement were continuous and ongoing acts of the initial

infringement. Every court to consider the issue has held that the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under section 412. *See Derek Andrew*, 528 F.3d at *passim*.

Accordingly, even if Plaintiffs could prove copyright infringement, they could not recover statutory damages or attorneys' fees because their copyrighted work was not registered prior to the commencement of the alleged infringement.

### 2.   Plaintiffs' trademark claims fail for multiple reasons.

All of Plaintiffs' trademark claims fail for multiple reasons, including because Plaintiffs have not produced any evidence: a) that the LIMO HOSTING mark is a legally protectable trademark, b) that Fiks used the LIMO HOSTING mark in commerce, c) that a likelihood of confusion exists as a result of Fiks's alleged use of the mark, or d) that Plaintiffs have suffered any damages.

#### a.   Plaintiffs have not produced any evidence of secondary meaning of the LIMO HOSTING mark.

To state a claim for trade name infringement under the Lanham Act, a plaintiff must allege facts that establish: (1) a valid, protectable interest in the trademark, and (2) that the defendant's use of the mark created a likelihood of confusion in the general public. *See Closed Loop Marketing, Inc. v. Closed Loop Marketing, LLC*, 589 F. Supp. 2d 1211, 1216 (E.D. Cal. 2008).

In order to establish ownership of a valid, protectable trademark, a plaintiff must establish that the trademark has acquired secondary meaning. The primary element of secondary meaning is a mental association in consumers' minds between the alleged trademark and a single source of a product or service. *See Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 873 (9th Cir. 2002); *see also*, *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971). Secondary meaning "is acquired when the name and the business become synonymous in the public mind; and submerges the primary meaning of the name . . . in favor of its meaning as a word identifying that business." *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    (1st Cir. 2004).  To acquire secondary meaning in the minds of the consuming public, a

2    labeled product or service, when shown to a prospective consumer, must prompt the

3    reaction: "that is the product I want because I know that all products with that trademark

4    come from a single source and have the same level of quality."  3 J. McCarthy, *McCarthy*

5    *on Trademarks and Unfair Competition* §15:11 (4th ed. 2008).  The burden of proof for

6    secondary meaning is upon the party trying to establish legal protection for the mark.

7    *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002).

8         Plaintiffs have produced no evidence of secondary meaning for the LIMO

9    HOSTING mark.  While Plaintiffs do have a registration for the LIMO HOSTING mark,

10   this registration is on the Supplemental Register.  A registration on the Supplemental

11   Register confers no substantive trademark rights beyond those under common law.  3 J.

12   McCarthy §19:36.  A registration on the Supplemental Register does not entitle it to any

13   presumption that the term is a trademark and not a generic name.  15 U.S.C. §1094; *see*

14   *CreAgri, Inc. v. USANA Health Sciences, Inc.* 474 F.3d 626, 629, n.6 (9th Cir. 2007); 3 J.

15   McCarthy §19:36.  In fact, "it is not prima facie evidence of anything except that the

16   registration issued."  3 J. McCarthy §19:36 *quoting In re Medical Disposables Co.*, 25

17   U.S.P.Q.2d 1801 (T.T.A.B. 1992); *see also Films of Distinction, Inc. v. Allegro Film*

18   *Productions, Inc.* 12 F. Supp. 2d 1068, 1075 (C.D. Cal. 1998) (stating that "a word,

19   symbol or device on the Supplemental Register is not, strictly speaking, a 'mark.' That is,

20   it is not registrable on the Principal Register and is only 'capable' of someday becoming a

21   'mark' upon the acquisition of secondary meaning").  Thus, a registration on the

22   Supplemental Registration will not, prima facie, receive protection as a valid trademark,

23   for its very presence on the Supplemental Register indicates a preliminary determination

24   that the mark is not distinctive of the applicant's goods or services.  3 J. McCarthy

25   §19:36.

26        While a plaintiff may still establish secondary meaning absent a statutory

27   presumption, a plaintiff must do so through a demonstration of significant advertising and

28   exposure that has established their trademark in the minds of consumers as an indication

Case No. 3:08-cv-02474-BZ                    10                    **FIKS'S TRIAL BRIEF**

of origin of their services. *FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671, 674 (7th Cir. 1972). Secondary meaning may be proved through evidence related to the amount and manner of advertising of the mark, sales volume, consumer testimony, whether use of the mark was exclusive, and consumer surveys. *See Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143 (9th Cir. 1999); *Finance Exp. LLC v. Nowcom Corp.*, 564 F.Supp.2d 1160 (C.D. Cal. 2008); *see also Japan Telecom, Inc.* 287 F.3d at 873. The test for secondary meaning becomes the effectiveness of the efforts to make the mark distinctive, and the chief inquiry is directed towards consumers' attitudes about the mark in question, and whether it denotes a single thing coming from a single source. *See Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970).

Here, Plaintiffs have not produced any evidence tending to establish secondary meaning of the LIMO HOSTING mark. Accordingly, all of Plaintiffs' trademark claims fail.

**b.   Plaintiffs have not produced any evidence that Fiks used the LIMO HOSTING mark in commerce.**

Plaintiffs' trademark claims also fail because Plaintiffs have produced no evidence that Fiks used the LIMO HOSTING mark in commerce. In order to establish statutory or common law trademark infringement, a plaintiff must prove that the defendant used the mark in commerce. *See Closed Loop Marketing, Inc.* 589 F. Supp. 2d at 1219. Plaintiffs have produced no such evidence.

**c.   Plaintiffs have not produced any evidence of actual or likely confusion.**

Plaintiffs have not produced any evidence that Fiks's alleged use of the LIMO HOSTING mark caused any actual or likely consumer confusion.

Plaintiffs bear the burden of proving a likelihood of confusion between the LIMO HOSTING mark and their services on the one hand and Fiks's alleged infringing activity on the other hand. *M2 Software, Inc., a Delaware corporation v. Madacy Entertainment, a corporation*, 421 F.3d 1073, 1080 (9th Cir. 2005). Plaintiffs may submit different types of evidence to establish a likelihood of confusion, including: 1) evidence of actual

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   instances of confusion, 2) survey evidence, and 3) inferences arising from judicial

2   comparison of conflicting marks and context of their use in marketplace.  *See Glow*

3   *Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 200); *Cairns v. Franklin*

4   *Mint Co.*, 24 F. Supp. 2d 1013, 1040 (C.D. Cal. 1998).

5        Plaintiffs have produced no evidence of likely or actual confusion.  Moreover, no

6   reasonable person could infer a likelihood of confusion by examining the allegedly

7   infringing activity in the marketplace (particularly given that Plaintiffs have produced no

8   evidence of Fiks's use of the mark).  Accordingly, Plaintiffs' trademark claims fail.

9            **d.    Plaintiffs have produced no evidence of any damages.**

10       While Plaintiffs seek actual damages for alleged trademark infringement, they

11   have produced no evidence of such damages.

12       Damages from trademark infringement must be proven, and cannot simply be

13   inferred based solely on evidence of decline in plaintiff's sales or of defendant's

14   willfulness.  *Computer Access Technology Corp. v. Catalyst Enterprises, Inc.*, 273 F.

15   Supp. 2d 1063, 1075-76 (N.D. Cal. 2003).  The plaintiff in a trademark infringement

16   action must prove both the fact and amount of its alleged damages.  *See Lindy Pen Co.,*

17   *Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993).  In fact, courts require a

18   heightened level of proof of injury for a plaintiff to recover damages for trademark

19   infringement.  *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661-62

20   (S.D. Cal. 1997).

21       Plaintiffs have submitted no evidence of any actual damages.  Thus, Plaintiffs'

22   trademark claims fail.

23        **3.    Plaintiffs have produced no evidence to support their trade libel claim.**

24       To prevail in a claim for trade libel, a plaintiff must demonstrate that the defendant:

25   (1) made a statement that disparaged the quality of plaintiff's product; (2) that the

26   offending statement was couched as fact, not opinion; (3) that the statement was false;

27   (4) that the statement was made with malice; and (5) that the statement resulted in

28   monetary loss.  *Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037,

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  1048 (N.D. Cal. 2004).

2       Plaintiffs' allege that by opining that Plaintiffs' services are "not worth the money,"

3  Fiks engaged in trade libel.  Plaintiffs claim fails for several reasons.  First, Plaintiffs have

4  produced no evidence that the statement at issue was not true.  Second, the statement

5  at issue would be understood by any reasonable reader as an opinion rather than

6  statement of fact.  Third, because Fiks is prepared to offer testimony that he believed his

7  statements were true at the time he made them, his statements were made without

8  malice.  Fourth, Plaintiffs have produced no evidence of any damages.  For all of these

9  reasons, Plaintiffs' trade libel claim fails.

10      **4.**    **Plaintiffs have produced no evidence to support their claim for**
11           **interference with contract.**

12       To prove a claim for interference with contract, a plaintiff has the burden of

13  establishing (1) a valid contract between the plaintiff and a third party; (2) defendant's

14  knowledge of the contract; (3) defendant's intentional acts designed to induce a breach

15  or disruption of the contractual relationship; (4) actual breach or disruption of the

16  contractual relationship; and (5) resulting damage.  *Guidiville Band of Pomo Indians v.*

17  *NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008).  As an affirmative defense to a

18  charge of interference with contract, a defendant may show that its actions were

19  privileged or justified.  *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205

20  (N.D. Cal. 2004).

21       Plaintiffs' interference with contract claim fails for multiple reasons.  First, Plaintiffs

22  have produced no evidence that Fiks knew about any contract between Plaintiffs and a

23  third party.  Second, Plaintiffs have produced no evidence demonstrating that Fiks

24  intended to disrupt this supposed relationship.  Third, Plaintiffs have not produced any

25  evidence that an actual breach occurred as a consequence of Fiks's actions.  Finally,

26  Plaintiffs have produced no evidence of any actual damages caused by the alleged

27  interference.  For all of these reasons, Plaintiffs' interference claim fails.

28  //

**5.    Plaintiffs have produced no evidence to support their interference with prospective economic advantage claim.**

To prevail on a claim for interference with prospective economic advantage, a plaintiff must prove: (1) the existence of an economic relationship between the plaintiff and a third party; (2) that the defendant was aware of the relationship and acted wrongfully with the purpose of disrupting the relationship; (3) that the relationship was disrupted; and (4) that the plaintiff suffered damages that flow proximately from the disruption. *Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1049 (N.D. Cal. 2004). The wrongful act must be conduct that was wrongful by some legal measure other than the fact of the interference itself. *Id.* However, a competitor is not liable for interference with prospective economic advantage if (1) the relation concerns a matter involved in the competition between the actor and the other; (2) the actor does not employ wrongful means; (3) his action does not create or continue an unlawful restraint of trade; and (4) his purpose is at least in part to advance his interest in competing with the other. *Pacific Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 819 (9th Cir. 1992).

Plaintiffs allege that Fiks's statements in online forums disrupted Plaintiffs' prospective economic relationships. Plaintiffs have not produced any evidence supporting the elements of an interference with prospective economic advantage claim. First Plaintiffs have not produced evidence of an economic relationship between Plaintiffs and a third party. Second, Plaintiffs have not produced evidence that Fiks was aware of that relationship. Third, Plaintiffs have not produced evidence that Fiks wrongfully acted with the purpose of disrupting that relationship or evidence that the relationship was in fact disrupted. Finally, Plaintiffs have produced no evidence they suffered damages as a result of the supposed interference. Accordingly, Plaintiffs' interference claim fails.

**6.    Plaintiffs' section 17200 claim is entirely derivative of their other deficient claims, and therefore fails**

Plaintiffs' seek relief under California Business & Professions Code section 17200 claim based on Fiks's actions that serve as the basis for Plaintiffs' other claims. Thus, Plaintiffs' section 17200 claim is entirely derivative of Plaintiffs' other claims. As

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  discussed in above, Plaintiffs cannot succeed on any of their claims—in fact they have
2  fallen far short of doing so.  Nor have Plaintiffs submitted any evidence to support a claim
3  for restitutionary relief as permitted under section 17200.  Accordingly, Plaintiffs' section
4  17200 claim must fail.

## IV. CONCLUSION

6       For all of the reasons set forth above, Fiks will succeed on his claims at trial,
7  whereas Plaintiffs' claims will fail.

9  Respectfully submitted,

10  Dated:  August 18, 2009                    KRONENBERGER BURGOYNE, LLP

12                                             By:  s/ Karl S. Kronenberger
                                                    Karl S. Kronenberger

                                               Attorneys for Defendant and Cross-
14                                             Plaintiff, MIKHAIL FIKS

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com