ORIGINAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIMO HOSTING, et al., | ) |
| Plaintiffs, | )  No. C08-2474 BZ |
| v. | ) |
| | )  **FINAL JURY INSTRUCTIONS** |
| MIKHAIL FIKS, et al., | ) |
| Defendants. | ) |

The Court proposes to give the following Jury

Instructions to the jury at the end of the case.

Dated: September 30, 2009

Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\LIMO HOSTING V. FIKS\PRETRIAL\Jury Instructions\FINAL JURY INSTRUCTIONS
COVER PLEADING.wpd

1

## SUMMARY OF CLAIMS

Plaintiffs Limo Hosting, Inc. and Oleg Gridnev sued Mikhail Fiks for (1) statutory trademark infringement; (2) common law trademark infringement; (3) false description and false designation of origin; (4) copyright infringement; (5) trade libel; and (6) interference with contract and; (7) interference with prospective business relations against defendant Mikhail Fiks.

Defendant counter claimed against plaintiffs for (1) intentionally interfering or attempting to interfere with defendant's civil rights by threatening or committing violent acts; (2) cybersquatting; and (3) defamation. Each side denies the other side's claims and asserts some affirmative defenses. Each side has the burden of proving its claims and defenses by a preponderance of the evidence.

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative

defense by a preponderance of the evidence, it means you must be

persuaded by the evidence that the claim or affirmative defense is more

probably true than not true.

You should base your decision on all of the evidence, regardless of

which party presented it.

## COMPLETE AFFIRMATIVE DEFENSE

On any claim, if you find that each of the elements on which the plaintiffs have the burden of proof has been proved, your verdict should be for the plaintiffs on that claim, unless you also find that a defendant has proved an affirmative defense to that claim, in which event your verdict should be for that defendant on that claim.

.

## CACI No. 203 PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

You may consider the ability of each party to provide evidence. If a party

provided weaker evidence when it could have provided stronger evidence,

you may distrust the weaker evidence.

## CACI No. 204 WILLFUL SUPPRESSION OF EVIDENCE

You may consider whether one party intentionally concealed or destroyed

evidence. If you decide that a party did so, you may decide that the

evidence would have been unfavorable to that party.

## MMJI 15.5 ELEMENTS OF STATUTORY TRADEMARK INFRINGEMENT

On plaintiffs' claim for trademark infringement, plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

(1) That LIMO HOSTING is a valid, protectable trademark;

(2) That plaintiffs own LIMO HOSTING as a trademark; and

(3) That defendant used LIMO HOSTING without the consent of the plaintiffs in a manner that was likely to cause confusion among ordinary purchasers as to the source of defendant's services.

If you find that each of the above elements has been proved, your verdict should be for plaintiffs. If, on the other hand, plaintiffs have failed to prove any of these elements, your verdict should be for defendant.

## MMJI 15.8 INFRINGEMENT—ELEMENTS—VALIDITY

The first consideration in an infringement lawsuit like this is for you to

determine whether plaintiff's trademark is valid. A valid trademark is a

word or combination of words that is either:

(1) inherently distinctive; or

(2) descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed. Only if you determine that

plaintiffs proved by a preponderance of the evidence that the LIMO

HOSTING mark is a valid trademark, should you consider whether plaintiffs

own it or whether defendant's actions infringed it.

## MMJI 15.9 Infringement – Elements – Validity– Strength as a Likelihood of Confusion Factor

The first step in determining whether plaintiffs' LIMO HOSTING mark is a valid trademark is the mark's distinctiveness. Distinctiveness refers to how strongly the mark identifies a product with the plaintiff and is an important factor to consider in assessing whether the mark is valid. In order to determine if plaintiffs have met their burden of showing that LIMO HOSTING is a valid trademark, you must first classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

Plaintiffs assert that LIMO HOSTING is a valid and protectable trademark for their design, creation and hosting of web sites for limousine services. Plaintiffs contend that Mr. Fiks's use of those words in connection with Mr. Fiks's web hosting services for limousine companies infringes plaintiffs' trademark and is likely to cause confusion about the business associated with the trademark.

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive at all are not entitled to any

trademark protection.

Trademarks are grouped into four categories according to their relative strength. These four categories are, in order of distinctiveness:

(1) arbitrary (which is inherently distinctive);

(2) suggestive (which also is inherently distinctive);

(3) descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain to you in another instruction; and

(4)  generic trademarks (which are entitled to no protection).

Here, plaintiffs are not claiming that LIMO HOSTING is an arbitrary or suggestive trademark.  Nevertheless, I am going to instruct you about all four categories so you can better understand how trademark protection fits together.

The first category is "inherently distinctive" trademarks.  They are considered strong marks and are clearly protectable.  They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a service.  Such a trademark is a word that in no way describes or has any relevance to the particular service it is meant to identify.  It may be a common word used in an unfamiliar way.  It may be a newly created word

or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

The next category of marks is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the service is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the service to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the service to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

The third category of marks is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the product or service to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a service comes from, or the name of the person who makes or sells the service. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive

trademark because it geographically describes where the cider comes from.  Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product.  So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than Cran Apple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

The fourth category of trademarks is entitled to no protection at all.  They are called generic trademarks and they give the general name of the service of the plaintiff.  They are part of our common language which we need to identify all such similar services.  They are the common name for the service to which they are affixed.  It is the general name for which the particular product or service is an example.  It is generic if the term answers the question "what is the service being sold?"  If the average consumer would identify the term with all such similar services, regardless of the service provider, the term is generic and not entitled to protection as a trademark.

Clearly, the word "apple" can be used in a generic way and not be entitled to any trademark protection. This occurs when the word is used to

identify the fleshy, red fruit from any apple tree.  The computer maker who uses that same word to identify the personal computer, or the vitamin maker who uses that word on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store.  As used by the grocer, the word is generic and does not indicate any particular source of the product.  As applied to the fruit, "apple" is simply the common name for what is being sold.

The only categories that you should consider in determining whether LIMO HOSTING is a valid trademark are descriptive and generic.

If you determine that LIMO HOSTING is descriptive, you will not know if the trademark is valid or invalid until you consider if it has gained distinctiveness by the acquisition of secondary meaning, which I will explain in the next instruction.

If you decide that LIMO HOSTING is generic, the mark cannot be distinctive. Therefore, it is not valid, cannot be infringed and you must render a verdict for defendant on the charge of infringement.

## MMJI 15.10
## INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—
## SECONDARY MEANING

If you determined that LIMO HOSTING is descriptive, you must
consider the recognition that the mark has among prospective purchasers.
This market recognition is called the trademark's "Secondary Meaning."

A term acquires a secondary meaning when it has been used in such
a way that its primary significance in the minds of the prospective
purchasers is not the product itself, but the identification of the product with
a single source, regardless of whether consumers know who or what that
source is.  You must find that the preponderance of the evidence shows
that a significant number of the consuming public associates LIMO
HOSTING with a single source, in order to find that it has acquired
secondary meaning.

You may consider the following factors when you determine whether
LIMO HOSTING has acquired a secondary meaning:

(1)    Purchaser Perception:  Whether the people who purchase the
        product or service that bears the claimed trademark associate
        the trademark with the owner, assignee, or licensee;

(2)  Advertisement:  To what degree and in what manner the owner, assignee, or licensee may have advertised under the claimed trademark;

(3)  Demonstrated Utility:  Whether the owner, assignee, or licensee successfully used this trademark to increase the sales of its product or service;

(4)  Extent of Use:  The length of time and manner in which the owner, assignee, or licensee used the claimed trademark;

(5)  Exclusivity:  Whether the owner's, assignee's, or licensee's use of the claimed trademark was exclusive;

(6)  Copying:  Whether the defendant intentionally copied the owner's, assignee's, or licensee's trademark;

(7)  Actual Confusion:  Whether the defendant's use of the plaintiff's trademark has led to actual confusion.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning or by the public coming to associate the mark with the owner of the mark. Descriptive marks are entitled to protection only as broad as the secondary meaning

they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

Plaintiffs have the burden of proving that the LIMO HOSTING has acquired a secondary meaning.

The mere fact that plaintiffs are using the term LIMO HOSTING, or that plaintiffs began using LIMO HOSTING before defendant, does not mean that the trademark has acquired secondary meaning. There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

## MMJI 15.12
## INFRINGEMENT—ELEMENTS—OWNERSHIP—GENERALLY

The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace.

If you find LIMO HOSTING to be a valid trademark, you must consider whether plaintiffs used LIMO HOSTING as a trademark for plaintiffs' design, creation, hosting, maintenance of websites before defendant began to use LIMO HOSTING to market his services in the same area where plaintiffs sell their services.

If you find by a preponderance of the evidence that plaintiffs have not shown that they used LIMO HOSTING before Mr. Fiks's used LIMO HOSTING, then you cannot conclude that plaintiffs are the owner of the trademark.

## MMJI 15.16 INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—SLEEKCRAFT TEST

In order to find for plaintiffs on their statutory trademark infringement claim, you must consider whether defendant's use of LIMO HOSTING was likely to cause confusion about the source of plaintiffs' or defendant's services.

I will suggest some factors you should consider in deciding this. These factors are simply a guide to help you determine whether confusion is likely to result from simultaneous use of the mark. No single factor or consideration is dispositive, and plaintiffs need not prove that all, or even most, of the factors listed below are present in any particular case to be successful. Nor are you limited to consideration of only these factors. You must consider and weigh all relevant evidence in determining whether there is a likelihood of confusion. Factors you may consider include:

(1) Strength or Weakness of the alleged LIMO HOSTING trademark:

The more the consuming public recognizes LIMO HOSTING as an indication of origin of plaintiffs' services, the more likely it is that consumers would be confused about the source of defendant's services if defendant

used a similar trademark. How distinctively a trademark indicates that a good comes from a particular source even if unknown is an important factor to consider for determining whether the trademark used by defendant creates for consumers a likelihood of confusion with the plaintiffs' mark.

### (2) Defendant's Use of LIMO HOSTING:

If defendant and plaintiffs use LIMO HOSTING on the same, related, or complementary kinds of services there may be a greater likelihood of confusion about the source of the services than otherwise.

### (3) Similarity of Plaintiffs' and Defendant's Marks:

If the overall impression created by plaintiffs' use of LIMO HOSTING in the marketplace is similar to that created by defendant's use of LIMO HOSTING in appearance or meaning, there is a greater chance that consumers are likely to be confused by defendant's use of a mark.

(4) Actual Confusion: If defendant's use of LIMO HOSTING has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, defendant's use of LIMO HOSTING may still be likely to cause confusion. As you

G:\BZALL\-BZCASES\LIMO HOSTING V. FIKS\PRETRIAL\Jury Instructions\JURY
INSTRUCTIONS.V6.FINAL.wpd                                           19

consider whether the trademark used by defendant creates for consumers a likelihood of confusion with the plaintiffs' trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendant's Intent:

Knowing use by defendant of plaintiffs' alleged trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of plaintiffs' trademark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that defendant acted knowingly, the use of plaintiffs' alleged trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels:

If plaintiffs and defendant's services are likely to be sold in the same or similar outlets, or advertised in similar media, this may increase the likelihood of confusion.

### (7) Purchaser's Degree of Care:

The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in plaintiffs' and defendant's use of similar trademarks.

### (8) Product Line Expansion:

When the parties' services differ, you may consider how likely plaintiffs are to begin selling the services for which defendant is using plaintiffs' trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

## MMJI 15.24 TRADEMARK DAMAGES—ACTUAL OR STATUTORY NOTICE

If you find that defendant infringed plaintiffs' valid trademark, in order

for plaintiffs to recover damages for statutory trademark infringement,

plaintiffs also have the burden of proving that defendant had either

statutory or actual notice that plaintiffs' trademark was registered.

Defendant had statutory notice if:

(1)   Plaintiffs displayed with their alleged trademark the words

"Registered in U.S. Patent and Trademark Office";

(2)    Plaintiffs displayed with their alleged trademark the words

"Reg. U.S. Pat. & Tm. Off."; or

(3)   Plaintiffs displayed the trademark with the letter R enclosed

within a circle, thus ®.

Defendant had actual notice if:

(1)   Plaintiffs sent a cease and desist letter; or

(2)   Plaintiffs filed the trademark infringement lawsuit.

## COMMON LAW TRADEMARK INFRINGEMENT

Plaintiffs have also sued defendant for common law trademark infringement. The test for common law trademark infringement is the same as the test for statutory trademark infringement described earlier. The only difference is that plaintiffs do not need to prove that defendant had either statutory or actual notice that plaintiffs' trademark was registered .

Thus, on plaintiffs' claim for common law trademark infringement, plaintiffs' have the burden of proving each of the following elements by a preponderance of the evidence:

(1)     That LIMO HOSTING is a valid, protectable trademark;

(2)     That plaintiffs own LIMO HOSTING as a trademark; and

(3)     That defendant used LIMO HOSTING without the consent of the plaintiffs in a manner that was likely to cause confusion among ordinary purchasers as to the source of defendant's services.

If you find that each of the elements on which plaintiffs have the burden of proof has been proved, your verdict should be for plaintiffs. If, on the other hand, plaintiffs have failed to prove any of these elements, your verdict should be for defendant.

## MMJI 15.25 TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES (cont.)

If you find for plaintiffs on plaintiffs' statutory trademark infringement claim and find that defendant had statutory notice or actual notice of plaintiffs' registered trademark, or if you find for plaintiffs on plaintiffs' common law trademark infringement claim or for plaintiffs on their false description and false designation of origin claim, you must determine plaintiffs' actual damages.

Plaintiffs have the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate plaintiffs for any injury you find was caused by defendant's infringement.

In determining the amount of plaintiffs' actual damages, you may include any of the following categories you find proven by plaintiffs:

(1)The injury to plaintiffs' reputation;

(2) The injury to and loss of plaintiffs' goodwill, including injury to plaintiffs' general business reputation;

(3) The lost profits that plaintiffs would have earned but for

defendant's infringement. Profit is determined by deducting all expenses

from gross revenue;

(4) The expense of preventing customers from being deceived; and

(5) The cost of future corrective advertising reasonably required to

correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising,

expense of preventing customers from being deceived), you must not

overcompensate. Accordingly, your award of such future costs should not

exceed the actual damage to the value of plaintiffs' mark at the time of the

infringement by defendant.

## MMJI 17.4 COPYRIGHT
## INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On plaintiffs' copyright infringement claim, plaintiffs have the burden of proving both of the following by a preponderance of the evidence:

(1) Plaintiffs are the owner of a valid copyright; and

(2) Defendant copied original elements from the copyrighted work.

If you find that plaintiffs have proved both of these elements, your verdict should be for plaintiffs. If, on the other hand, plaintiffs have failed to prove either of these elements, your verdict should be for defendant.

## MMJI 17.5 COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION

Plaintiffs are the owners of a valid copyright in plaintiffs' website

content if plaintiffs prove by a preponderance of the evidence that:

(1)  Plaintiffs' website content is original; and

(2)  Plaintiffs are the authors or creators of the website content.

## MMJI 17.12 COPYRIGHT INFRINGEMENT—ORIGINALITY

An original work may include or incorporate elements taken from prior works, works from the public domain, or works owned by others, with the owner's permission. The original parts of plaintiffs' work are the parts created:

(1) Independently by the work's author, that is, the author did not copy it from another work; and

(2) By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

## MMJI 17.15 Copying – Access and Substantial Similarity

Plaintiffs have the burden of proving that defendant copied original elements from plaintiffs' copyrighted work. Plaintiffs may show that defendant copied from the work by showing by a preponderance of the evidence that defendant had access to plaintiffs' copyrighted work and that there are substantial similarities between defendant's work and original elements of plaintiffs' work.

Plaintiffs must also show by a preponderance of the evidence that defendant or whoever created the work owned by him had access to plaintiffs' work. You may find that defendant had access to plaintiffs' work if defendant or whoever created the work owned by him had a reasonable opportunity to view, read, or copy plaintiffs' work before defendant's work was created.

## MMJI 17.25 Copyright Damages – Statutory Damages

If you find for plaintiffs on their copyright infringement claim, you must determine plaintiffs' damages.  Plaintiffs seek a statutory damage award, established by Congress for the work infringed.  Its purpose is to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

## MMJI 17.27 Copyright – Damages – Willful Infringement

An infringement is considered willful when plaintiffs have proven both

of the following elements by a preponderance of the evidence:

(1) Defendant engaged in acts that infringed the copyright; and

(2) Defendant knew that those acts infringed the copyright.

## Trade Libel

Plaintiffs have also filed a claim against defendant for trade libel.

Trade libel is an intentional disparagement of the quality of property, which results in pecuniary damage.

Trade libel is not a claim for defamation. Trade libel is closer to a claim for unfair competition. Unlike defamation, trade libel is not directed at plaintiffs' character. Rather, trade libel is directed at plaintiffs' goods or services.

To succeed on a claim for trade libel, plaintiffs must prove that:

(1) Defendant made a statement;

(2) The statement contained a false disparagement of the quality of plaintiffs' services;

(3) Defendant acted with actual malice in making the statement, meaning that defendant knew that the statement was false or did not have a basis of knowledge or belief professed by his assertion;

(4) The statement induced others not to deal with plaintiffs; and

(5) Plaintiffs suffered damages as a result of the statement.

## CACI 1707 Statement of Fact v. Opinion

For plaintiffs to recover on their trade libel claim, defendant's statements must have been statements of fact, not opinion. A statement of fact is a statement that can be proved to be true or false. An opinion may be considered a statement of fact if the opinion suggests that facts exist to support the opinion.

In deciding this issue, you should consider whether the average reader would conclude from the language of the statement and its context that defendant was making a statement of fact.

## Trade Libel– Damages–Special Damages

Plaintiffs are entitled to damages that they have suffered with respect to their property, business, trade, profession, or occupation as a result of the trade libel.

Such damages include items of loss that are more or less peculiar to the particular plaintiffs in that plaintiffs actually suffered the loss in the specific amount.

Two limitations apply to trade libel damages:

(1) They must be proved to a reasonable certainty; and

(2) They are not recoverable unless they are actually related to the trade libel.

If you find that Plaintiffs have proved all of the elements of trade libel, your verdict should be for the Plaintiffs. If, on the other hand, the Plaintiffs have failed to prove any of the elements of trade libel, your verdict should be for Defendant.

## CACI 2201 Intentional Interference With Contractual Relations

Plaintiffs claim that defendant intentionally interfered with the contracts between plaintiffs and plaintiffs' customers. A contract is an agreement to do or not to do a certain thing.

To establish this claim, plaintiffs must prove each of the following:

(1) That there was a contract between plaintiffs and a third party;

(2) That defendant knew of the contract;

(3) That defendant intended to disrupt the performance of this contract . In deciding whether defendant acted intentionally, you may consider whether he knew that a disruption was substantially certain to result from his conduct;

(4) That defendant's conduct prevented performance or made performance more expensive or difficult;

(5) That plaintiffs were harmed; and

(6) That defendant's conduct was a substantial factor in causing plaintiffs' harm.

An absolute defense to an interference with contractual relations claim is truth. Defendant cannot be liable for interfering with plaintiffs' contractual relations by giving truthful information to a third party.

## CACI 2202 Intentional Interference With Prospective Economic Relations

Plaintiffs claim that defendant intentionally interfered with an economic relationship between them and third party Janice Downs that probably would have resulted in an economic benefit to plaintiffs. To establish this claim, plaintiffs must prove all of the following:

(1) That plaintiffs and Janice Downs were in an economic relationship that probably would have resulted in an economic benefit to plaintiffs;

(2) That defendant knew of the relationship between plaintiffs and Janice Downs;

(3) That defendant intended to disrupt the relationship between plaintiffs and Janice Downs. In deciding whether defendant acted intentionally, you may consider whether he knew that a disruption was substantially certain to result from his conduct;

(4) That defendant engaged in wrongful conduct through misrepresenting the quality of plaintiffs' services. The "wrongful conduct" must fall outside the privilege of fair competition;

(5) That the relationship between plaintiffs and Janice Downs was disrupted;

(6) That plaintiffs were harmed; and

(7) That defendant's wrongful conduct was a substantial factor in causing plaintiffs' harm.

An absolute defense to an interference with prospective economic relations claim is truth. Defendant cannot be liable for interfering with plaintiffs' prospective economic relations by giving truthful information to a third party.

## CACI 3900 Introduction to Tort Damages—Liability Contested

If you decide that plaintiffs have proved their claim against defendant for intentional interference with contractual relations or intentional interference with prospective economic relations, you also must decide how much money will reasonably compensate plaintiffs for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that v caused by defendant's wrongful conduct, even if the particular harm could not have been anticipated.

Plaintiffs do not have to prove the exact amount of damages that will provic reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

## CACI 3903N Lost Profits (Economic Damage)

To recover damages for lost profits, plaintiffs must prove they are reasonably certain they would have earned profits but for defendant's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount plaintiffs would have received but for defendant's conduct and then subtract from that amount the expenses plaintiffs would have had if defendant's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

## DEFENDANT'S COUNTERCLAIMS INTRODUCTION TO DEFENDANT'S COUNTER-CLAIMS

As I noted at the beginning of these instructions, Mr. Fiks is not only a defendant in this lawsuit, he is also a counter-claimant. This means that defendant has asserted claims against plaintiffs and you must decide whether Mr. Fiks has established that plaintiffs are liable as to these claims.

## CACI 3025 Bane Act – Threat– Essential Factual Elements (Civ. Code, § 52.1)

Defendant claims that plaintiffs intentionally interfered with or attempted to interfere with his civil rights by threatening or committing violent acts. To establish this claim, defendant must prove all of the following:

(1) That by threatening or committing violent acts, plaintiffs interfered with or attempted to interfere with defendant's rights, including his:

(a) Right to freedom of expression, including the freedom to peaceably operate his business;

(b) Right to operate a lawful for-profit business;

(c) Right to live free of threats of death or great bodily injury;

(d) Right to be free from computer hacking and unauthorized computer access;

(2) That defendant reasonably believed that if he exercised these rights, plaintiffs would commit violence against him or his property.

(3) That defendant was harmed; and

(4) That plaintiffs' conduct was a substantial factor in causing defendant's harm.

If you find that defendant has proved this claim, you must award the following:

(1) Actual damages sufficient to reasonably compensate defendant for the harm; and

(2) A minimum of $4,000 per violation and a maximum of three times the amount of actual damages.

Defendant must prove the amount of his actual damages. However, defendant does not have to prove the exact amount of the harm or the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

## CACI 3940 Punitive Damages – Individual Defendant – Trial not Bifurcated

If you decide that Mr. Gridnev committed threats or defamation in violation of the law, or if you decide that Mr. Fiks committed trade libel in violation of the law, you must next decide whether the misconduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the other party and to discourage similar conduct in the future.

The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the other and to discourage similar conduct in the future.

You may award punitive damages only if a party proves by clear and convincing evidence that the other party engaged in that conduct with malice, oppression, or fraud.

"Malice" means that someone acted with intent to cause injury or that the parties' conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous

consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that a party's conduct was despicable and subjected the other party to cruel and unjust hardship in knowing disregard of their rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a party intentionally misrepresented or concealed a material fact and did so intending to harm another party.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(1) How reprehensible was the party's conduct? In deciding how reprehensible the party's conduct was, you may consider, among other factors:

(A) Whether the conduct caused physical harm;

(B) Whether the party disregarded the health or safety of others;

(C) Whether the party was financially weak or vulnerable and the other party knew the party was financially weak or vulnerable and took advantage of it;

(D) Whether the party's conduct involved a pattern or practice; and

(E) Whether the party acted with trickery or deceit.

(2) Is there a reasonable relationship between the amount of punitive damages and the party's harm or between the amount of punitive damages and potential harm to the party that the other party knew was likely to occur because of its conduct?

(3) In view of the party's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because the party has substantial financial resources.

Punitive damages may not be used to punish a party for the impact of its alleged misconduct on persons other than the opposing party.

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proof on a matter by clear and convincing evidence, it means you must be persuaded by the evidence that it is highly probable that the matter is true. The clear and convincing evidence standard is a heavier burden than the preponderance of the evidence standard.

You should base your decision on all of the evidence, regardless of which party presented it.

## **Cybersquatting– Introduction**

Defendant seeks damages from plaintiffs for violation of the federal

law known as the Anti-Cybersquatting Consumer Protection Act, which will

be referred to as "ACPA." The purpose of ACPA is to prevent people from

registering Internet domain names that contain another person's

trademark. A domain name is an Internet address such as www.cnn.com

that has been registered with or assigned by any domain-name authority.

## Cybersquatting– Liability under the Anti-Cybersquatting Consumer Protection Act

Plaintiffs are liable to defendant for violation of the ACPA if you find that defendant has proven by a preponderance of the evidence each of the following elements:

(1) Plaintiffs registered, trafficked in, or used the following domain names: <freelimowebsite.org>, <freelimowebsite.net>, <freelimowebsites.org>, and/or <freelimowebsites.net>. I will refer to these domain names as the "Disputed Domains."

(2) The trademark FREE LIMO WEBSITE was distinctive at the time of plaintiffs' registration of the Disputed Domains. You were earlier instructed that for a trademark to be distinctive it must be arbitrary, suggestive, or descriptive.

(3) The Disputed Domains are identical to or confusingly similar to the trademark FREE LIMO WEBSITE.

(4)Plaintiffs committed these acts with a bad-faith intent to profit from the registration of the Disputed Domains.

## Bad Faith Intent to Profit

A finding of "bad faith" is an essential prerequisite to finding an ACPA violation. To guide your determination of whether plaintiffs had a bad faith intent, you may consider the following factors. You may decide that not every factor applies to this case, and you are not limited to only these factors.

(1) Whether plaintiffs are using, or have a good faith intent to use, the Disputed Domains as marks for their own goods or services. For example, a person's use of the domain name <deltaforce.com> to promote the movie Delta Force would tend to indicate that person did not have a bad faith intent to profit from the mark DELTA as used for faucets and airlines.

(2) Whether plaintiffs intended to divert consumers from defendant's own website to a website under the Disputed Domains that could harm the goodwill represented by FREE LIMO WEBSITE. A website "could harm the goodwill represented by FREE LIMO WEBSITE" if: (a) it creates a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the website; and (b) it either (i) is for commercial gain, or (ii) shows an intent to tarnish or disparage FREE LIMO WEBSITE.

(3) Whether plaintiffs offered to transfer, sell, or otherwise assign the Disputed Domains to defendant or any other person for financial gain without having used, or having an intent to use, the Disputed Domains in connection with a good faith offering of goods or services; or whether plaintiffs have exhibited a pattern of such conduct in the past. This factor should not weigh against plaintiffs if you find that they had a legitimate reason for obtaining the Disputed Domains and a legitimate reason for failing to offer goods or services in connection with the Disputed Domains.

(4) Whether plaintiffs: (a) provided false or misleading information regarding their contact information when applying for the registration of the Disputed Domains; (b) intentionally failed to maintain accurate contact information; or (c) have established a pattern of such conduct in the past. This factor should not weigh against plaintiffs if you find that plaintiffs had some legitimate reason to hide their identity.

(5) Whether plaintiffs have registered or otherwise acquired multiple domain names in addition to the Disputed Domains that plaintiffs know are identical to, confusingly similar to, or dilutive of other marks such that plaintiffs would be liable under the ACPA with respect to those additional domain names.

(6)  The extent to which FREE LIMO WEBSITE is or is not distinctive.

The more distinctive you find FREE LIMO WEBSITE to be, the more this

factor weighs against plaintiffs; the less distinctive you find FREE LIMO

HOSTING to be, the more this factor favors plaintiffs.

## Cybersquatting– Statutory Damages

Defendant seeks a statutory damage award, established by Congress for violations of ACPA.  The purpose of these statutory damages is to penalize the infringer and deter future violations of ACPA.

If you find that defendant has proved that plaintiffs violated ACPA, you may award statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name.

## CACI No. 1702 Defamation per se – Essential Factual Elements (Private Figure – Matter of Public Concern)

Defendant claims that plaintiffs harmed him by making one or more of the following statement(s): (typos in original)

• "This Mike Fix, lazy non-creative Soviet mentality loser goes to LimoHosting.com copies the entire home page presentation and pastes it on his phony wannabe-directory site."

• "I though the guy must have some mental malfanction. So now, this rat decides to go to a war with us by creating another website where he took out of context some pathetic attempt to slander our company by another rip off artist, and without displaying our response."

• "I hope you realise that the sales pitch you may have read on his sites which may have influenced your decision to subscribe for his services is none of his original thoughts and in fact belongs to us."

• "Anyone should know that this rat with his spam sites has minimal traffic and his money making concept is simple."

• "This Mike Fix, lazy non-creative freedom-of-speech-hippie mentality loser goes to LimoHosting.com and many other sites, copies the

entire home page presentation and pastes it on his phony wannabe-directory site."

• "Speaking of a Rat in your Barn, this small minded ripoff artist then goes to our directory like it's his own freaking collection of good ideas, images and content, takes whatever he wants and under the radar sells our work as his own to even our clients."

• "He licks off our work from our sites, calls in and pretends to be a potential customer so that he could fish out our rates and then even further use it against us, while all alone using our sales pitch on his sites, and once confronted he gets upset that he could not come up with his own style and puts a 'Consumer Alert' about our company totally out of context."

## CACI 1702 Defamation per se—Essential Factual Elements (Private Figure—Matter of Public Concern)

To establish this claim, defendant must prove all of the following:

(1) Plaintiffs made one or more of these statements to persons other than defendant;

(2) That the people who read these statements reasonably understood that the statement were about defendant;

(3) That the people who read these statements reasonably understood the statement to impute something with reference to defendant's business, which had a natural tendency to harm defendant's business or lessen defendant's profits;

(4) That the statements were false; and

(5) That plaintiffs failed to use reasonable care to determine the truth or falsity of the statements.

## CACI 1702 Actual Damages

If defendant has proved that plaintiffs are liable for defamation, then defendant is entitled to recover his actual damages if he proves that plaintiffs' wrongful conduct was a substantial factor in causing any of the following:

(1) Harm to defendant's property, business, trade, profession, or occupation;

(2) Expenses defendant had to pay as a result of the defamatory statements;

(3) Harm to defendant's reputation; or

(4) Shame, mortification, or hurt feelings.

## CACI 1702  Assumed Damages

If defendant has not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, but proves by clear and convincing evidence that plaintiffs knew the statements were false or that they had serious doubts about the truth of the statements, then the law assumes that defendant's reputation has been harmed and that he has suffered shame, mortification, or hurt feelings.

Without presenting evidence of damage, defendant is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable.  You must award at least a nominal sum, such as one dollar.

## CACI 1702 Punitive Damages

Defendant may also recover damages to punish Mr. Gridnev if he proves by clear and convincing evidence that Mr. Gridnev either knew the statements were false or had serious doubts about the truth of the statements, and that he acted with malice, oppression, or fraud, as I instructed you earlier.

## AFFIRMATIVE DEFENSE – UNCLEAN HANDS

Even if you find that Plaintiffs have proved the elements of their case, you may still find against Plaintiffs if you decide that Plaintiffs' conduct has been inequitable, unfair, or deceitful and if Plaintiffs' misconduct relates to the issues tried in this lawsuit.

Similarly, even if you find that Mr. Fiks has proved the elements of his case, you may still find against him if you decide that Mr. Fiks's conduct has been inequitable, unfair, or deceitful and if Mr. Fiks's misconduct relates to the issues tried in this lawsuit.